CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
9/25/2018
JULIA C. DUDLEY, CLERK
BY: S/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| BETTY M. WEST, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5:16-cv-00029 |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAS PROCESSING | ) | By: Michael F. Urbanski |
| CENTER, INC., et al., | ) | Chief United States District Judge |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. Plaintiff Betty M. West ("West") alleges that Americas Processing Center, Inc. ("APC") and Michael R. Jackson, the owner of APC, engaged in a campaign of debt collection abuse and violated the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 et seq. ("FDCPA").[1] Compl., ECF No. 2. Pending before the court are West's motion for default judgment, ECF No. 22, and motion for attorney fees, ECF No. 24. Pursuant to 28 U.S.C. § 636(b)(1)(B), the court referred both motions to United States Magistrate Judge Joel C. Hoppe for a report and recommendation. ECF No. 20.

The magistrate judge heard oral argument on the motions on January 9, 2018, ECF No. 26, and accepted additional briefing in support of the motion for default judgment on January 30, 2018. ECF No. 28. In a report and recommendation issued on July 25, 2018, the

---

[1] West named Gregory Blue, Rene Ward, Charles Kane, and John Doe as defendants at the time of filing her complaint (ECF No. 2), but stipulated to their dismissal from the action without prejudice on January 30, 2018. ECF No. 29. The court ordered these defendants' dismissal without prejudice on February 1, 2018. ECF No. 30.

magistrate judge recommended granting West's motions for default judgment and attorneys' fees as to APC only. ECF No. 31.

The magistrate judge recommended finding personal jurisdiction over APC based on its employees' debt collection phone calls to West at her home in Grottoes, Virginia and West's allegation that one of APC's employee represented that she was an agent of the Commonwealth of Virginia. ECF No. 31, at *9. The magistrate judge further recommended finding that APC violated the FDCPA because (1) West is a consumer as defined by 15 U.S.C. § 1692a(1); (2) West held a payday loan that qualifies as debt under § 1692a(5); (3) APC is a debt collector pursuant to 15 U.S.C. § 1692a(6) based on its attempt to collect debt owed to Allied Cash Advance; and (4) APC's agents claimed to work for the Commonwealth of Virginia, failed to identify themselves as debt collectors or convey that information obtained would be used for debt collection purposes, generally intimidated West, and failed to provide written disclosures under § 1692d, § 1692e, and § 1692g. ECF No. 31, at *12–16.

Although recommending default judgment against APC, the magistrate judge recommended finding that the court does not have personal jurisdiction over Jackson and denying the motion for default judgment as to him. ECF No. 31, at *9–10, 26. The magistrate judge found that the court lacked personal jurisdiction over Jackson because his involvement in this action was limited to creating and overseeing the policies and procedures used at APC, and did not extend to personal contacts to West. ECF No. 31, at *9–10. Even if the court had personal jurisdiction, the magistrate judge concluded that West failed to state a claim upon which relief could be granted. ECF No. 31, at *16–17. West's complaint does

not provide sufficient facts to support that Jackson is a debt collector or that he personally participated in APC's alleged violations of the FDCPA. ECF No. 31, at *17.

After finding APC violated the FDCPA, the magistrate judge recommended awarding actual damages of $5,000 due to the severity of West's symptoms following APC's initial debt collection contact, and $1,000 in statutory damages based on his determination that APC's conduct was intentional. ECF No. 31, at *21. The magistrate judge further recommended awarding litigation costs of $165 and attorney fees of $9,506.25 given counsel's experience, hours requested based on the successful claims, and reasonableness of the hours expended in this action. ECF No. 31, at *22–26. West timely filed a limited objection to the magistrate judge's recommendation pertaining only to her claims against Jackson. ECF No. 32.

For the reasons stated below, the court will **OVERRULE** West's objections, **ADOPT** the report and recommendation to the extent consistent with this opinion, **GRANT in part** West's motion for default judgment, and **GRANT** West's motion for attorney fees and costs.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection."

United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Techs., Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)), aff'd, 498 F. App'x 268 (4th Cir. 2012); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed.").

Further, objections that only repeat arguments raised before the magistrate judge are considered general objections to the entirety of the report and recommendation. See Veney, 539 F. Supp. 2d at 845. As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505], 509 [(6th Cir. 1991)].

539 F. Supp. 2d at 846. A plaintiff who reiterates her previously raised arguments will not be given "the second bite at the apple she seeks." Id. Instead, her re-filed brief will be treated as a general objection, which has the same effect as a failure to object. Id.

## II.

In her limited objection, West supports the magistrate judge's recommendation of entering default judgment against APC and awarding attorney fees and costs.[2] See Obj. to Mag. Judge's R. & R. Not Finding Pl. Entitled to Default J. Against Def. Michael R. Jackson ("Pl.'s Obj."), ECF No. 32, at 5. However, she disagrees with the magistrate judge's findings regarding personal jurisdiction over Jackson and his liability. West argues that Jackson's ownership and operation of APC, creation of APC's collection policies and procedures, oversight of the application of these policies and procedures, and management of the daily collection operations—including authorization of the collection efforts in interstate commerce—supports a finding of personal jurisdiction. Id. at 2. West also contends that the court should infer that Jackson was both the unidentified caller and "Charles Kane."[3] Id. at 3. In addition to the personal jurisdiction objection, West contends that the complaint

---

[2] West does not object to the magistrate judge's recommendation that the court grant her motion for default judgment against APC. After careful review, the court accepts the recommendation.

[3] West alleges that she received debt collection calls from an unidentified man on May 12, 2015 and a man identifying himself as "Charles Kane" on May 26, 2015. See Compl., ECF No. 2, at ¶¶ 20, 36.

sufficiently alleges Jackson's liability for APC's violations of the FDCPA. Id. at 3. West argues that Jackson qualifies as a debt collector and violated the FDCPA based on the inference that Jackson called as the "unidentified man" or "Charles Kane." The court reviews the magistrate judge's recommendation de novo.

### A.

Rule 55 of the Federal Rules of Civil Procedure governs entries of default and default judgments. Pursuant to Rule 55(a), the Clerk must enter default against a party that "has failed to plead or otherwise defend" against an action. After the Clerk has entered default, a plaintiff may seek a default judgment against a defendant pursuant to Rule 55(b). A court must "exercise sound judicial discretion" when considering whether to enter default judgment, "and the moving party is not entitled to default judgment as a matter of right." EMI Apr. Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009) (citing Sentry Select Ins. Co. v. LBL Skysystems (U.S.A.) Inc., 486 F. Supp. 2d 496, 502 (E.D. Pa. 2007)). The United States Court of Appeals for the Fourth Circuit has expressed "a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). Default judgment may be appropriate, however, "when the adversary process has been halted because of an essentially unresponsive party." S.E.C. v. Lawbaugh, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Upon default, any well-pled allegations as to liability are taken as true. See Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC, 958 F. Supp. 2d 588, 594 (D. Md. 2013). Nevertheless, a court must still "determine whether the well-pleaded allegations in

[the plaintiff's] complaint support the relief sought." Ryan v. Homecomings Fin. Network, 253 F.3d 778, 780 (4th Cir. 2001); see also GlobalSantaFe Corp. v. Globalsantafe.com, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Accordingly, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." United States v. Newbill, No. 7:15-CV-00009, 2015 WL 4393418, at *1 (W.D. Va. July 14, 2015) (quoting Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, No. 99-1508, 1999 WL 598860, at *1 (4th Cir. Aug. 10, 1999)). In contrast, allegations relating to damages are not deemed admitted, even when a defendant has failed to respond. Accordingly, the court must make an "independent determination regarding damages." Entrepreneur Media, Inc., 958 F. Supp. 2d at 593. Rule 55 provides that a court may, as it deems necessary, conduct an evidentiary hearing to "determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B).

### B.

The court need only address West's first objection regarding personal jurisdiction over Jackson because the court agrees with the magistrate judge's recommendation. When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility,

and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

Before exercising personal jurisdiction over a nonresident defendant, a court must find that two conditions are satisfied. First, the state's long-arm statute must authorize exercise of jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must comport with Fourteenth Amendment due process standards. See Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01–328.1, as coextensive with the Due Process Clause. See English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due process, the two-prong test collapses into a single inquiry when assessing personal jurisdiction in Virginia.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012) (internal quotations and citations omitted).

8

The question, then, is whether defendant has sufficient "minimum contacts with [Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This test aims to ensure defendants are not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id., and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued." Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980)).

Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken through consideration of two categories of personal jurisdiction—general and specific. See Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). General jurisdiction requires a substantial connection to the forum; the defendant's contacts must be so continuous and systematic as to render him essentially "at home." Id. at 754, 760 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851–54 (2011)). Specific jurisdiction exists in a suit arising out of or related to the defendant's contacts with the forum. Id. at 754. "There must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State. When there is no such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Bristol-Myers

Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773, 1781 (2017) (internal citation and quotation marks omitted).

West limits her objection to the magistrate judge's finding on specific jurisdiction. In assessing specific jurisdiction, courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process. Courts evaluate: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." PTA-FLA, Inc. v. ZTE Corp., 715 F. App'x 237, 242 (4th Cir. 2017) (quoting ESAB Grp., Inc. v. Zurich Ins. PLC, 685 F.3d 376, 391 (4th Cir. 2012)).

The personal jurisdiction inquiry for FDCPA cases is not straightforward. In the Western District of Virginia, courts have exercised personal jurisdiction over a president and dominant shareholder of a debt collection company who (1) indirectly and directly collected debts by obtaining new collection accounts for the company and (2) received a commission for those accounts. See West v. Costen, 558 F. Supp. 564, 585 (W.D. Va. 1983) ("An officer of a corporation cannot be held personally liable for the wrongful conduct of the corporation's employee' absent personal involvement with the conduct. . . . [A]s MSF's dominant shareholder, Costen can be held personally liable under the FDCPA if the undisputed facts of this case justify disregarding MSF's corporate entity.").[4] In a separate

---

[4] The court in Costen held that the president did not personally violate the FDCPA and thus could not be held liable as an individual. The focus of the case was on the potential disregard of the president's corporate entity. Courts have held that "[p]ersonal liability can be imposed under the FDCPA either under the theory of personal involvement in the conduct or by piercing corporate veil." Powers v. Credit Mgmt. Servs., Inc., No. 8:11CV436, 2016 WL 612251, at *9 (D.

10

action, the court has dismissed an FDCPA claim against officers and owners of a debt collection agency for failing to state a claim because there were no allegations that they personally engaged in activities that made them qualify as debt collectors under the FDCPA. See Thomas v. Finneran, No. CIV.A. 7:09CV00354, 2009 WL 2588348, at *1–2 (W.D. Va. Aug. 20, 2009) ("Officers are not liable under the FDCPA solely by virtue of the offices that they hold and stockholders are not liable solely by virtue of the fact that they are stockholders."). Neither of these cases specifically addressed personal jurisdiction over the officers and effectively assumed such jurisdiction for review of the merits. Cf. Dryden v. Accredited Collection Agency, Inc., No. 3:14-CV-255, 2015 WL 3646649, at *3 (E.D. Va. June 10, 2015) (entering default judgment against company and relying on Finneran to hold that CEO was not a debt collector because plaintiff alleged that CEO status imputed liability, but not addressing personal jurisdiction).

Outside of this district, courts have found personal jurisdiction over defendants who own and control debt collection companies in limited circumstances. In Pope v. Vogel, No. 97 C 1835, 1998 WL 111576, at *3–4 (N.D. Ill. Mar. 5, 1998), the district court in the Northern District of Illinois exercised specific jurisdiction over the president and owner of a debt collection company even though his "contacts with Illinois are limited to the debt collection practices of his companies" because (1) the debt collection practices concerned Illinois residents indebted to his company; (2) he "directs the affairs of both companies, and is the sole employee of PAF and one of two employees of AACI"; and (3) he "directed PAF to purchase or collect debts from individuals who reside in Illinois."

---

Neb. Feb. 2, 2016). West does not appear to ask the court to disregard the corporate form to hold Jackson liable, and has not offered any argument (or apparently any supporting allegations) to that effect.

11

However, this evaluation of personal jurisdiction depends on the owner or officer of a company's level of involvement in the decision making for the debt collection at issue. For example, in Bickley v. Gregory, No. 2:16CV131, 2016 WL 6306148, at *2 (E.D. Va. Oct. 7, 2016), report and recommendation adopted, No. 2:16CV131, 2016 WL 6398804 (E.D. Va. Oct. 26, 2016), the court exercised personal jurisdiction over an owner in a default judgment action based on the owner's transaction of business in Virginia, including her conversations with a debt collection employee about the demand for debt payment and instructions to the employee to take certain actions. Cf. Brujis v. Shaw, 876 F. Supp. 975, 980 (N.D. Ill. 1995) (exercising jurisdiction over officers, and electing not to apply fiduciary shield doctrine, where officers were in a position to decide whether the contacts with the forum were made and had been warned that their practice was deceptive by the Federal Trade Commission).

This analysis often turns on whether the owner or officer had personal in-forum contacts. In the District of Massachusetts, the court found there was no personal jurisdiction over corporate officers because the plaintiff failed to make sufficient factual allegations about the officers' personal in-forum contacts and made conclusory allegations about their operation of the company and personal knowledge of the business practices. See Grice v. VIM Holdings Grp., LLC, 280 F. Supp. 3d 258, 278–79 (D. Mass. 2017). Similarly, the court in the District of Delaware dismissed an FDCPA claim on personal jurisdiction grounds where the plaintiff only alleged that an individual defendant was employed as a collector for a debt collection company, but did not address whether the defendant maintained contacts with the forum or acted in the forum. See Gunn v. Specialized Loan Servicing LLC, No. CV 15-810-RGA, 2016 WL 1073285, at *3 (D. Del. Mar. 18, 2016).

Direct contact between the owner or officer and plaintiff may not be necessary to establish personal jurisdiction. In a case with no direct contact between the plaintiff and defendant, the district court of the District of New Mexico evaluated the level of control a sole proprietor of a debt collection company had over her employees. See Gallegos v. Tygart, No. CIV. 14-291 JCH/KK, 2017 WL 4872887, at *4–5 (D.N.M. July 20, 2017). The court found jurisdiction over the sole proprietor based on the activities of her agents because she assigned plaintiff's debt to her employee debt collector, her employees called the plaintiff as part of their employment duties, and she had the right to train and monitor her debt collectors and monitor their collections accounts. Id.

The court notes that many of these cases were decide prior to the U.S. Supreme Court's 2017 decision in Bristol-Myers Squibb, which emphasized the need for an "activity or an occurrence that takes place in the forum State." 137 S. Ct. at 1781. Even so, these cases require that the plaintiff allege a contact, either directly by the owner or officer or indirectly through a significant level of control over the actions of an employee, in order to obtain personal jurisdiction. Here, West does not sufficiently allege contact or any connection between Jackson and her FDCPA claim in Virginia. West does not allege that Jackson was personally involved in the collection practices affecting her debt. She broadly alleges that Jackson created APC's collection policies and procedures, managed APC's daily collection operations, and oversaw the application of the policies and procedures. Compl., ECF No. 2, at ¶ 5. But West does not allege whether the employees were following these policies and procedures when engaging in the FDCPA violations, whether Jackson directed or controlled such conduct, or if there were any other owners, officers, or directors of APC

13

that could be responsible for such conduct. She does not address how much control Jackson may have over APC in general, whether it is a company with few employees or many, or if Jackson has acted in a manner that suggests he intended for APC to target Virginia debtors.

In her objections to the report and recommendation, West tries to create Jackson's purposeful availment or his affiliation with her claim in Virginia by arguing that the court should infer Jackson was both the unidentified caller and "Charles Kane." Id. at 3. The court recognizes that plaintiffs in other actions have alleged that defendants used aliases in their FDCPA actions with success. See, e.g., Williams v. Prof'l Collection Servs., Inc., No. CV 04-286 JS ARL, 2004 WL 5462235, at *3–4 (E.D.N.Y. Dec. 7, 2004) ("The plaintiff contends in her memorandum that the phone messages were likely made either one or both of the owners using the alias 'Jimmy King.' Assuming these facts to be true, the plaintiff has alleged sufficient facts to hold James Vogel and James Dorsa liable under the Fair Debt Collection Practices Act."). However, the plaintiffs made the allegations in those cases. This court cannot infer allegations that are not present in the complaint, particularly on default judgment where the defending party has not responded to the allegations actually stated.

The complaint as it stands does not support a finding of personal jurisdiction. However, West's argument in her objections that Jackson called her via unidentified calls or as "Charles Kane" suggests that she may be able to allege sufficient facts in support of personal jurisdiction. The court will provide West with leave to amend her claim against Jackson only based on the deficiencies noted in this opinion and in the magistrate judge's report and recommendation. If West decides to amend her complaint against Jackson in this district, she would be well-advised to consider the very fact-specific inquiries addressed by

other courts in assessing whether an owner or officer is a debt collector or engaged in an FDCPA violation. Without assessing the merits, the court notes that courts throughout the country place a significant emphasis on the officer's or owner's personal involvement in the debt collection action or his or her level of control over the company.[5] A number of courts have held that "[a]n individual can be found personally liable if the individual 1) materially participated in collecting the debt at issue; 2) exercise[d] control over the affairs of [the] business; 3) was personally involved in the collection of the debt at issue, or 4) was regularly engaged, directly and indirectly, in the collection of debts." Powers v. Credit Mgmt. Servs., Inc., No. 8:11CV436, 2016 WL 612251, at *9 n.12 (D. Neb. Feb. 2, 2016) (noting also that "[m]ost district courts that have addressed the issue have held that the corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA."); see also Ross v. I.C. Sys., Inc., No. 08-3008-CV-S-DW, 2008 WL 11336931, at

---

[5] See, e.g., Cruz v. Int'l Collection Corp., 673 F.3d 991, 999–1001 (9th Cir. 2012) (finding owner was a debt collector based on testimony that he did everything for company, including collection duties, and that he violated the FDCPA by signing a letter to the plaintiff that included false information); Baltazar v. Houslanger & Assocs., PLLC, No. 16-4982 (JMA) (AKT), 2018 WL 3941943, at *17–18 (E.D.N.Y. Aug. 16, 2018) (recommending denial of motion to dismiss because plaintiff alleged that the sole member of the company was personally involved with the alleged violation, controlled debt collection activities, and signed the restraining notice at issue); Schwarm v. Craighead, 552 F. Supp. 2d 1056, 1073–74 (E.D. Cal. 2008) (imposing personal liability where the collection activities of the company were its sole source of income, and the only profit-generating activity the president and director oversaw was collecting debts—while the president did not draft the form collection letters the company used, he was one of only three individuals that had final authority over the company's collection procedures); Som v. Daniels Law Offices, P.C., 573 F. Supp. 2d 349, 355–56 (D. Mass. 2008) (denying motion to dismiss because although status as employee and stakeholder alone could not subject defendant to FDCPA liability, his involvement in "formulating, implementing, and/or ratifying the [language of the debt-collection letter] and the underlying debt collection practices of defendant law firm" allowed for possible joint and several liability); Piper v. Portnoff Law Assocs., 274 F. Supp. 2d 681, 689–90 (E.D. Pa. 2003) ("[I]ndividuals who exercise control over the affairs of a business may be held liable under the FDCPA for the business" actions."); Pabon v. Recko, No. 3:00CV380 DJS TPS, 2001 WL 36356981, at *5–6 (D. Conn. Apr. 25, 2001) (finding majority owner to be liable for FDCPA violations because he investigated plaintiff's potential liability and took several other actions involving the collection of plaintiff's debt); Musso v. Seiders, 194 F.R.D. 43, 47 (D. Conn. 1999) ("The plaintiff does not seek to hold the defendant liable simply by virtue of his position with CRA; rather, she alleges that he is personally liable as a debt collector because he knew of the allegedly unlawful procedures being used but nevertheless approved or ratified them."); Egli v. Bass, No. 98 C 2001, 1998 WL 560270, at *2 (N.D. Ill. Aug. 26, 1998) (finding owner and principal of company liable under FDCPA not because of her positions but because she devised and implemented the company's procedures and personally approved the letter at issue); ; Teng v. Metro. Retail Recovery Inc., 851 F. Supp. 61, 67 (E.D.N.Y. 1994) (finding president and manager to be debt collectors based in part on their actionable phone calls).

*1–2 (W.D. Mo. Aug. 5, 2008) (same). Under Rule 55, this court must still "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought," see Ryan, 253 F.3d at 780, and these cases could guide whether sufficient facts exist in this action to support Jackson's alleged FDCPA liability.

### III.

For the reasons stated above, the court **ADOPTS** the report and recommendation to the extent consistent with this opinion, **GRANTS in part** West's motion for default judgment, and **GRANTS** West's motion for attorney fees and costs. The court **GRANTS LEAVE TO AMEND** the complaint solely as to the claim against Jackson in order to remedy the deficiencies set forth in this opinion and the magistrate judge's report and recommendation. Any amended complaint must be filed within **thirty (30) days** of this opinion.

An appropriate Order will be entered this day.

Entered: 09/25/18

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge